F. G. WELCH, Appellee, v. WILLIAM L. KEERAN et al., Appellants.

No. 46173.

FEBRUARY 16, 1943.

REHEARING DENIED MAY 14, 1943.

H. E. deReus, of Knoxville, and H. S. Life, of Oskaloosa, for appellants.

David, Jones & David, of Oskaloosa, and Jones & White, of Ottumwa, for appellee.

MANTZ, J.—■ This is an action in forcible entry and detainer brought by F. G. Welch against William L. Keeran, Mrs. William L. Keeran, and Frank Randell, wherein plaintiff sought to obtain possession of a certain 100-acre farm in Mahaska county, claiming the right to possession by virtue of an oral lease with Anna Welch. Plaintiff, a son of Anna Welch, claims to have been a tenant of such land by oral leases renewed from year to year for a period of about eight years just prior to March 1, 1942, and that sometime in 1941 he and the owner, by oral agreement, renewed the lease for the year beginning March 1, 1942. His claim is that no notice to terminate said lease was given him prior to November 1, 1941, as provided by statute. The lease was for share rent of corn, grain, and AAA benefits.

Defendants William L. Keeran and wife claim right to occupancy by reason of a written lease entered into between Anna Welch, the owner, and said defendants, said lease being for a three-year period beginning March 1, 1942. Defendant Frank Randell claims the right to possession by reason of the assignment to him of the lease between the Keerans and Anna Welch.

The case was tried in equity, and on May 25, 1942, there was filed in the district court a decree wherein the court found in favor of the plaintiff, F. G. Welch, and against the defendants, awarding plaintiff possession of the land involved, holding that no notice of the termination of the tenancy had been given plaintiff prior to November 1, 1941, as provided in sections 10161 and 10162, Code of Iowa, and that by reason of such lack of notice the plaintiff was entitled to possession of said 100 acres from March 1, 1942, to March 1, 1943, and ordering that he be put in possession thereof. The defendants appealed from such decree and order.

There is but one question in the case and that is, Was a notice given of the termination of the tenancy to F. G. Welch before November 1, 1941, as contemplated by sections 10161 and 10162, Code of Iowa? If no such notice was given, then the decree of the district court is right; otherwise, the finding should have been for the defendants.

Section 10161, as amended by the Forty-eighth General Assembly, reads as follows:

"10161  Agreement for termination. Where an agreement is made fixing the time of the termination of the tenancy, whether in writing or not, it shall cease at the time agreed upon, without notice. In the case of farm tenants, except mere croppers, occupying and cultivating an acreage of forty acres or more, the tenancy shall continue for the following crop year upon the same terms and conditions as the original lease unless written notice for termination is given by either party to the other not later than November 1, whereupon the tenancy shall terminate March 1 following; provided further, the tenancy shall not continue because of absence of notice in case there be default in the performance of the existing rental agreement.

"10162  Notice—how served. When a tenant cannot be found in the county, the notice above required may be given to any subtenant or other person in possession of the premises, or, if the premises be vacant, by affixing the notice to any outside door of the dwelling house thereon, or other building, if there be no dwelling house, or in some conspicuous position on the premises, if there be no building.

The evidence shows without dispute that F. G. Welch, appellee, was the son of Anna Welch, the owner of the premises with the right of rental; that said F. G. Welch had farmed said land as a tenant of Anna Welch about seven years on March 1, 1941; that the rentals were one half the corn and two fifths the grain, with a division of the crop benefits when under the AAA program; that he had a son, Melvin Welch, who is twenty-six years of age and a single man. During the tenancy, Melvin lived with his father on the farm. About the last of March or first of April 1941, F. G. Welch moved from the farm in controversy to one purchased by him in Monroe County, Iowa, and since that time has been a nonresident of Mahaska county, and he states that since that time Monroe county has been his residence continuously. Melvin remained on the farm and looked after the farming operations during the year of 1941. He had charge of the farm work, putting in the crop, harvesting it, and dividing the shares of landlord and tenant. There were machinery and stock on the farm and furniture in the house. These belonged to F. G. Welch. After F. G. Welch moved to Monroe county in April 1941, he took some of the stock and machinery with him. Later in the year some of this was returned to the Mahaska county farm.

On August 27, 1941, Anna Welch wrote to Melvin Welch the following letter, same being Exhibit B in evidence. This letter reads as follows:

"Mrs. A. E. Welch, Cedar, Iowa
August 27, 1941

Dear Melvin:

I am sorry I cannot accommodate you by renting you my place for another year but I have had a better offer of shares of the crops to be raised next year & other things considered think best to have a change. You people have had it or the use of it for a long time & I don't think you should feel hard on me if I have a change. I will have a contract soon to that effect for the year 1942. Hope you may find a place to suit you better.

Grandma Welch."

This letter was enclosed in an envelope addressed in writing to "Mr. Melvin Welch, Cedar, Iowa. R. R."

On this envelope were twenty-one cents United States postage stamps. There was on it the following: "Registered No. 2. Return receipt requested, Fee Paid." On the reverse side of the envelope appears the postal stamp "Cedar, Iowa, Registered August 27, 1941." This envelope was Exhibit A herein.

The evidence shows that "Melvin," to whom the letter was addressed, was the same person as Melvin Welch, son of F. G. Welch, and that "Grandma Welch," who wrote the letter, is the same person as Anna Welch, mother of F. G. Welch and grandmother of Melvin Welch.

Melvin admits that he received the registered letter some time after it was written. When questioned as to when he received it he seemed evasive, frequently falling back on, "I wouldn't say, I can't remember." When asked if he received it near the date of August 27, 1941, he said, "I do not remember."

"Q. What is your best judgment? A. Well, it was along sometime there in the fall. Q. Would you say along about the end of August? A. I wouldn't say. * * * Q. You do not know when you received it? A. I didn't say I didn't know. * * * Q. Do you know when you got it? A. No sir. * * * Q. You do not remember the month? * * * The court: Is it the fact that you do not remember, or are unwilling to answer? A. I do not remember."

When asked as to when he showed the notice (Exhibit B) to his father he was even more evasive. Here follow a few of the questions on that point and the somewhat illuminating answers:

"Q. How soon after you received this notice did you show it to your father? A. Well, it was quite a while. Q. How long? A. Oh, I would say two or three months. Q. Two or three months —that was up here at the farm when you showed it to him? A. I do not remember. Q. Are you certain of that? A. I do not remember. Q. You do not know whether you showed it to him at the farm or at the Cedar Garage? A. I do not remember. Q. You think you showed it to him about two or three months after you received this notice? A. I suppose so. Q. Was that the

first time you saw him to show it to him after you got this notice?
A. I do not remember. * * * Q. Did you read it to him, or did
he read it himself? A. I do not remember that.''

Melvin claimed to be the hired man on the farm, working
there for his father. After his father moved to Monroe county,
Melvin said that his father helped farm the land in suit and was
there once or twice a week anyhow. As to how he was paid his
wages he was indefinite and uncertain. The record shows that
Melvin, in 1941, sold at the elevator in Cedar quantities of soy
beans, one lot being 218 bushels and the other 76 bushels. For
these four checks were issued, two to Melvin Welch and two to
A. E. Welch (Anna Welch).

The evidence further shows that Melvin signed the AAA pro-
gram as applicant. The following question was asked him:

''Q. Had you been authorized by your father to sign them?
A. No.''

While both Melvin and his father claimed that the relation-
ship between them was employer and hired man, yet we find it
difficult to so agree. In some respects Melvin acted as a tenant,
in others he and his father acted like joint tenants. Certainly
he was in possession and carrying on in a manner quite beyond
the realm of a hired man. In some respects he acted more like
an agent. He states that his father was up at the farm at least
twice a week, and yet he states that the notice of August 27th
was not mentioned for two or three months. It seems hardly
credible that the written notice sent him by registered mail and
advising the termination of the lease would not be shown by him
or given to his father for from two to three months thereafter.
This claim does not impress us as being the way persons usually
act. On the question of the time when Melvin called the atten-
tion of his father to the notice (Exhibit B) his testimony and
that of the father were in conflict. In response to one question
F. G. Welch said that he did not know of the notice until just
before the case, was tried in 1942.

We think that the notice given by Anna Welch to Melvin
Welch on August 27, 1941, was sufficient under the statute. Its
purpose was simply to notify the tenant of the fact that the

landlord did not intend to renew the lease. Such notice is not jurisdictional and is in the category of notices given to convey information. See North v. Kinney, 231 Iowa 951, 2 N. W. 2d 407; In re Lounsberry, 208 Iowa 596, 226 N. W. 140. See, also, Boston Morris Plan Co. v. Barrett, 272 Mass. 487, 172 N. E. 603.

F. G. Welch admits that he was a nonresident of Mahaska county following March 1, 1941. Being an admitted nonresident makes operative that portion of section 10162 of the Code which provides that where the tenant cannot be found in the county the notice may be given to any subtenant or other person in possession of the premises. We are of the opinion that the admitted nonresidence of F. G. Welch made it unnecessary to give him the notice as provided for in section 10162 and that the letter of August 27, 1941, to his son, who was in possession of the leased farm, was sufficient to furnish the information desired to be conveyed.

In view of our opinion that the notice given by Anna Welch on August 27, 1941, was sufficient under the statute, we hold that the court was in error in finding that F. G. Welch was entitled to possession of the premises for the year following March 1, 1942. Accordingly, said decree is reversed and remanded for decree in harmony with the finding herein.—Reversed and remanded.

GARFIELD, C. J., and HALE, MILLER, OLIVER, WENNERSTRUM, SMITH, and MULRONEY, JJ., concur.