## In re BERGIN.

No. 3167.

District Court, N. D. Iowa.

April 29, 1944.

R. Brown, of Creston, Iowa, for bankrupt, Charlie Bergin.

L. W. Powers and E. A. Norelius, both of Denison, Iowa, for Rosa Friedrichsen.

GRAVEN, District Judge.

In this case the debtor Charlie Bergin, a resident of Crawford County, Iowa, on October 25th, 1942, filed a debtor's petition under Section 75 of the Bankruptcy Act, 11 U.S.C.A. § 203. His offer of composition was rejected and he was adjudged a bankrupt on October 20th, 1943. He scheduled among his assets a certain farm not involved in this hearing. He also scheduled a considerable amount of live stock and farm machinery all free from encumbrance. The debtor is a batchelor now seventy-three years of age.

On March 9th, 1942, prior to the time of the filing of his debtor's petition, the debtor had entered into a written lease with Rosa Friedrichsen whereby he leased one hundred and sixty acres of farm land for the period from March 1st, 1942 to March 1st, 1943. Under the lease the debtor was to pay $960 rent per year. This hearing has to do with the matter of the possession of the farm owned by Rosa Friedrichsen. Rosa Friedrichsen herself is not in bankruptcy, and she and her farm are only involved in this matter because the debtor happened to be a lessee of her land at the time he filed his debtor's petition.

At all times since the filing of the debtor's petition up to April 3rd, 1944, there was no conciliation commissioner for Crawford County. A conciliation commissioner was named. He acted briefly without qualifying, then refused to qualify, and subsequently left for the military service. A conciliation commissioner was appointed on April 3rd, 1944, who qualified immediately and assumed the duties of his office. No trustee or trustees have been appointed at any time.

Since this was a proceeding under Section 75 the debtor was left in possession and management of his property. It does not appear just how and in what manner the debtor has been carrying on his farming operations, and how much land he is farming in all. There are claims by his counsel that he is a "large operator". The debtor's connection with the bankruptcy court has been very sketchy. On September 13th, 1943, he filed a petition to recover certain farm machinery claimed to have been taken from him by some third party not involved in this hearing. On May 6th, 1943, the debtor was examined as to the disposition of his property. Such examination showed that he had sold 2,000 bushels of pop corn, two bull calves and a pony. Such examination showed that he had paid some rent and a note not listed in his schedules, some bills and hired help. This was all done without any permission or leave of the bankruptcy court and unknown to it at the time it was done. The payments claimed to have been made did not account for the proceeds of the property sold, and the debtor refused to account for the money received from the sale of the pop corn, but did indicate his willingness to account for the money received from the sale of the calves and the pony.

It also appears that the debtor has been engaged in a controversy with the Albert Dickinson Seed Company relating to a contract for the growing of pop corn on the premises in question. The Albert Dickinson Seed Company has filed claim in bankruptcy court for damages because of a claimed breach of contract by the debtor. The debtor throughout has indicated the attitude that he may dispose of his crops and the personal property listed in his schedules as he pleases without any leave of the bankruptcy court, and that what he does with the proceeds received from such sales concerns no one but himself.

It inferentially appears that the rent for this particular farm for the period ending March 1st, 1943, has been paid, and that the rent for the period expiring March 1st, 1944, has been paid. It appears that on the particular farm in question that last year the pop corn was not planted until the fore part of June, and that up to the date of this hearing on April 25th, 1944, that sixty acres of that pop corn was still unharvested. Whether this neglect has been occasioned by the debtor farming too much land or by other causes does not appear. It does not appear whether the debtor lives on the farm in question or not.

There is involved in this matter Sections 10161 and 10162 of the 1939 Code of Iowa, which as amended by Chapter 255 of the Acts of the 50th General Assembly (1943) provide as follows:

"[Section] 10161. Agreement for termination. Where an agreement is made [for] fixing the time of termination of the tenancy, whether in writing or not, it shall cease at the time agreed upon, without notice. In the case of farm tenants, except mere croppers, occupying and cultivating an acreage of forty acres or more, the tenancy shall continue for the following crop year upon the same terms and conditions as the original lease unless written notice for termination is given by either party to the other, whereupon the tenancy shall terminate March 1, following; provided further, the tenancy shall not continue because of absence of notice in case there be default in the performance of the existing rental agreement."

"[Section] 10162. Notice—how and when served. The written notice so required shall be given as follows:

"1. By delivery of notice in person on or before November 1 by one party to the other with acceptance of service thereon to be signed by the person receiving the notice, or

"2. By service on either party on or before November 1 by a person in behalf of the other party, in the same manner as original notices are served, or

"3. By either party sending to the other at his last known address, before November 1, a notice by registered mail with a return receipt demanded."

In this case the landlord did not give any notice under these statutes before November 1st, 1942, but on September 23rd, 1943, the landlord caused to be served on the debtor a notice of intention not to extend the lease beyond March 1st, 1944. The debtor refused to give up possession of the premises on March 1st, 1944, and the landlord undertook by a forcible entry and detainer action in justice court to oust the debtor from the premises. Those proceedings were enjoined by an injunction by a State District Court to prevent interference with the bankruptcy court.

The above legislation has been held constitutional. Benschoter v. Hakes, Iowa 1943, 8 N.W.2d 481. The continuation of a lease under these sections is optional with the parties. Benschoter v. Hakes, supra. On page 487 of 8 N.W.2d in Benschoter v. Hakes, the Iowa Supreme Court states: "This law extends the lease no longer than the time it would take one of the parties to terminate it." A party may waive the right to notice or be estopped to claim it. Smith v. Coutant, Iowa 1943, 6 N.W.2d 421.

Prior to the amendment of these sections by Chapter 255 of the Acts of the 50th General Assembly (1943) these sections provided for written notice, without specifying the manner of giving it. Prior to the amendment it had been held that notice by registered mail was sufficient. Welch v. Keeran, Iowa 1943, 7 N.W.2d 809. The notice is not process or jurisdictional. Welch v. Keeran, supra. The purpose of the notice is to convey information. In the case of Welch v. Keeran, supra, the Iowa Court, on page 812 of 7 N.W.2d, states: "Such notice is not jurisdictional and is in the category of notices given to convey information."

It is well settled that a court of bankruptcy assumes custody of all of the property of a bankrupt, whether the property is scheduled or not. It is also well settled that where the property is in the custody of the bankruptcy court that no party may seize such property either by legal process or without legal process without leave of the bankruptcy court. There is a distinction between a landlord attempting to seize property in the custody of the bankruptcy court, and a landlord giving notice under Sections 10161 and 10162, above referred to. The notice provided for in those sections is for the purpose of conveying information. The information is that the landlord does not intend to extend the lease. In a case where a landlord wished to seize property in the custody of the bankruptcy court, he would have to make application to the bankruptcy court for leave to do so, and the application could be granted or denied in the proper discretion of the court. However, where all the landlord desires to do is to convey information of an intent not to execute a lease, it could hardly be seriously contended that the landlord would have to make application to the bankruptcy court for leave to convey information to the bankruptcy court that the landlord did not desire to contract for an extension of the lease. The landlord has an absolute right to enter or not to enter into an extension of the lease. A bankruptcy court would not

have the right to go out and seize the premises of some third person and put a bankrupt in possession thereof; neither can the bankruptcy court compel a landlord to enter into a contract for lease if the landlord does not wish to do so. While a bankruptcy court would have the right to stay any legal proceedings, it would not have the power to stay a landlord from conveying information as to his intention not to contract for an extension of lease.

The legal situation appears to be that the landlord has an absolute legal right not to contract for an extension of the lease, and it is not within the power of the bankruptcy court to make that decision for him, and that all that is required of the landlord under the Iowa law is that he convey information that he does not desire to extend the lease, and that conveying of such information is not an interference with the bankruptcy court.

The next question that presents itself is as to whom the landlord must convey the information of his intention not to extend the lease where a tenant is in bankruptcy. In the case of an ordinary bankruptcy proceedings a trustee is appointed who takes custody of the property of the bankrupt, and the trustee manages and takes entire and complete control of all of the debtor's property under the supervision of the referee, and the bankrupt steps out of the picture entirely except as to the matter of getting his discharge at a later time. In such a case the question as to whom the landlord should convey his information as to his intention not to extend the lease could vary. If the trustee accepted the lease it would seem that the information as to non-extension should be conveyed to the trustee. If the trustee rejected the lease, then it would seem that the information should be conveyed to the bankrupt himself, for in such a case the matter of extension would be purely a matter between the landlord and the bankrupt.

Section 75 of the Bankruptcy Act provides for a procedure entirely different than that provided for the usual cases of bankruptcy. In the usual case the trustee is appointed who takes charge of the bankrupt's property and manages it and liquidates it under the supervision of the referee, and the bankrupt has no further connection with the property. In cases under Section 75 the bankrupt himself is left in possession of the property and manages it under the supervision of a conciliation commissioner, who is also referred to as a referee. Thus under Section 75 the bankrupt himself takes the place of and performs the functions usually performed by trustees, and the conciliation commissioner performs the duties usually performed by the referee. The bankrupt himself is in effect the representative of the bankruptcy court in charge of the property.

In this particular case there was no conciliation commissioner to whom the landlord could convey information as to her intention not to contract for extension of the lease. The debtor himself was in possession of the property performing the duties analogous to those of a trustee. It is the view of the court that when the landlord in this case gave notice to the debtor of her intention not to contract for an extension of lease, that it constituted the proper and legal conveying of such information to the bankruptcy court, and that even if the bankruptcy court had accepted the lease in this case, that its rights to the premises in question expired on March 1st, 1944.

It might also be noted in this connection that while in the usual case it is the trustee in bankruptcy who brings the action to enjoin interference with the bankruptcy court, that in this case the bankrupt playing a role analogous to that of a trustee, brought injunction proceedings in the state court in his own name. That action was brought by him without any order or direction of court.

While it is the holding of the court that even if the lease in question had been accepted by the bankruptcy court, that the notice of the non-extension given in this case was sufficient to terminate the rights of the bankruptcy court in and to the premises as of March 1st, 1944, yet there is another ground for reaching the same conclusion. The matter of this lease was never officially called to the attention of the conciliation commissioner or the court until April 13th, 1944, when the conciliation commissioner held quite an extensive hearing as to the matter of the relation of the bankruptcy court to this lease. The conciliation commissioner made a report recommending the rejection of the lease as an asset of the bankrupt estate.

The bankrupt has never at any time listed any indebtedness owing as rent to Rosa Friedrichsen. If the bankruptcy court should have accepted the lease for

the claimed extended period, and the crops raised were not sufficient to pay the rent, or were not applied on the rent, there would seem to be no doubt that the other assets of the estate would have to be utilized to pay the rent. It might also be that if the bankruptcy court accepted the lease, that this would also subject the estate for claims for damages in connection therewith, like the claim of the Albert Dickinson Seed Company. It is the duty of the conciliation commissioner and this court to also consider the interests of the creditors of this estate. The manner in which the bankrupt has been carrying on his farming operations on this particular piece of land, and his involvements in connection therewith, would justify the recommendations of the conciliation commissioner that the lease in question be not considered an asset of the estate. That recommendation is further justified by the fact that any rights that the bankruptcy court might have asserted in the premises after March 1st, 1944 were terminated by the notice given on September 23rd, 1943.

It is the holding of the court that the recommendation of the conciliation commissioner that the lease in question be rejected as an asset in this estate is hereby approved and confirmed; and that the application of Rosa Friedrichsen for the bankruptcy court to disclaim any interest in the lease is hereby granted.