CHARLES LEISE, appellant, v. DONALD SCHIEBEL et ux., appellees.

No. 48603.

(Reported in 67 N.W.2d 25)

NOVEMBER 16, 1954.

Haupert & Robertson, of Marshalltown, for appellant.

Fairall & Kilbride, of Marshalltown, for appellees.

SMITH, J.—The case involves questions of fact requiring appraisal of sharply conflicting testimony. Plaintiff pleads an oral agreement (during the summer of 1953) to terminate what was at best a very loose, continuing tenancy agreement that commenced December 1, 1949. The prayer is for a declaratory judgment "that the relationship * * * is terminated as of March 1, 1954, and that defendants by their words, acts and conduct are estopped from claiming any right to possession * * * from and after" that date.

The pleading however only alleges reliance by plaintiff upon defendants' claimed conduct as excusing his failure to serve "formal notice upon defendants or either of them as provided by chapter 562 of the 1950 Code of Iowa."

Defendants' answer not only denies the factual allegations but affirmatively pleads plaintiff did attempt to serve "notice of termination of tenancy by registered mail as provided" in said chapter, but failed to do so "within the time or times provided."

I. Plaintiff's own pleading (above-quoted) probably precludes any claim by him on appeal that he relies on the sufficiency of the notice he mailed defendant Donald Schiebel on October 23, 1953. He does nevertheless argue that strict

compliance with the statute is unnecessary, its purpose being "merely to convey information to the tenant that the landlord does not intend to renew the lease" and that the notice given was sufficient for that purpose.

Section 562.6, Iowa Code, 1950, so far as material here, provides: "In the case of farm tenants * * * the tenancy shall continue for the following crop year upon the same terms and conditions as the original lease unless written notice for termination is given by either party to the other, whereupon the tenancy shall terminate March 1 following; * * *."

Section 562.7, in 1943 (Acts 50th G.A., chapter 255, section 2) replaced an older one which ("when a tenant cannot be found in the county") authorized the giving of the notice to the person in possession, or "if the premises be vacant" it could be given by certain posting on the premises. Section 10162, Iowa Code, 1939.

It was said in earlier cases that under the former statute the notice of termination was "not process nor is it jurisdictional." North v. Kinney, 231 Iowa 951, 952, 2 N.W.2d 407; Welch v. Keeran, 233 Iowa 499, 504, 7 N.W.2d 809. It was pointed out the language of the statute required the notice be "given", not that it be "served." North v. Kinney, supra.

But section 562.7 now quite definitely requires "service." It provides three methods: the first, a written "acceptance of service" on or before November 1; the second, "by service * * * in the same manner as original notices are served" on or before November 1; or, third, "a notice by registered mail with a return receipt demanded" sent at least ten days before November 1.

We cannot treat these elaborate provisions as merely directory. The statute is mandatory. Unless we can find defendants have by oral agreement, or by their conduct relied on by plaintiff to his disadvantage, deprived themselves of its protection, we must affirm the trial court's decision. Rudolph v. Davis, 237 Iowa 1383, 25 N.W.2d 332, and Bates v. Bates, 237 Iowa 1408, 24 N.W.2d 460, cannot avail plaintiff under this record.

II. Plaintiff's claim of oral agreement and estoppel

cannot be sustained. The testimony reveals some kind of an oral lease was entered into in December 1949. Plaintiff and his two sisters, all unmarried, had been living on the farm. The terms of the arrangement under which defendants moved on are not very specific. The parties were well acquainted. Plaintiff testified he had known defendant Donald Schiebel "since birth." There was some arrangement by which defendants had farmed some of the land a year or two before they moved on.

Plaintiff thus described the original arrangement December 1, 1949: "* * * the terms were a half stock share lease, each of us to furnish half the seed, and he was to furnish all the power and do all the farming. We were to get half clear through except I gave him permission to keep two milk cows and around 100 hens. I was not to get anything from the milk cows and I was to get just enough from the hens for table use. There was quite a bit of fruit there and I was to get part of that."

The exact terms are immaterial here. We set out plaintiff's version to illustrate the nebulous character of the original contract.

Along about March 1, 1953, defendants sold all the cattle and hogs and retained only a number of sheep. No claim is made that the proceeds were not properly accounted for. There is dispute in the record as to whether plaintiff had been apprised of defendants' intention to sell. Also the testimony of what took place thereafter is in sharp dispute. There were undoubtedly times when plaintiff told defendants, in effect, that they were not to have the farm after that year. We find no indication however that any of these conversations were designed to constitute a flat agreement for, or oral notice of, termination of the tenancy. Certainly at no time was there any indication plaintiff was attempting to terminate the contract orally in lieu of the statutory method.

Plaintiff's own testimony as to any agreement with defendants seems to center on what took place on May 26 when defendants brought eggs to the home of plaintiff and his sisters. He says he accused Donald: "You broke the lease and

68.

you have to move, and in the final settlement I don't want to have ,a few eggs mixed up in the settlement." Yet the nearest he comes to claiming there was any agreement at that time is in his summation:. "On May 26th I had a conversation with Mr. and Mrs. Schiebel, and I do not recall now what they said only they gave me the impression they were going to move onto the 80 acres bought by Bert (Donald's foster father)." Then he was asked: "Q. That was because of the way they conducted themselves and the things they said to you? [Objection] A. Sure." On cross-examination he admits: "There hasn't been any time that I can think of since March 1, 1953, that Don and Mrs. Schiebel told me that' they was going to move off the farm."

Plaintiff's sister Edna testifies as to that same May 26: "Ethel, Lola [defendant] and I were in the living room and Charles [plaintiff] and Donald [defendant] were in the room with the business, at the desk. There was a dining room in between us and Charles ,and Donald wouldn't hear us talking. I asked Lola if they had found a place and she said, 'Well' she says, 'Yes, we've got an 80.' She said it wasn't the best place in the world but it would be a place to move to. She didn't say when they were moving, but I assumed, of course, that it was the following year." Ethel Leise, plaintiff's other sister, gave substantially the same version.

There is of course other testimony to consider but none that comes nearer than that to establishing an agreement to waive the notice required by Code sections 562.6 and 562.7. It is clearly insufficient.

III. Nor is the record more favorable to plaintiff on the subject of estoppel. If we were to assume there was anything in defendants' conversation and conduct sufficient to form the foundation for ,a claim of estoppel, there seems to be no testimony that plaintiff relied on it and was induced by such reliance to delay or forego giving of the statutory notice of termination.

Being cross-examined as to the sending of the notice plaintiff said: "The reason that I sent the notice by registered letter to Donald Schiebel was that I wanted to get in all the

notices that I could that he had to move. * * * I didn't think it was necessary to send it unless he tried to stay, it would be additional evidence he was to move. * * * I wanted to comply with the law providing for the termination of farm tenancies. However, my idea was that the notice was not necessary to complete the termination."

This does not indicate there was such reliance as would establish an estoppel. It seems rather to cast doubt—or to indicate some doubt in plaintiff's mind—as to whether any contract or agreement of cancellation had been reached.

IV. In our discussion under Divisions II and III we confined ourselves almost entirely to testimony on plaintiff's behalf. Much of it was contradicted. As to the May 26th conversation (defendants say it was May 25th) defendant Donald Schiebel says: "I didn't say anything about moving * * *. The only thing I remember Mr. Leise saying about moving was that he didn't know what he was going to do, that we might just go on as we are. That is the only statement I remember him making. During the period from March 1, 1953, up until November 1, 1953, I never did tell Charlie Leise that I intended to move off the farm."

He describes the work he did on the eighty acres purchased by his father. He not only farmed it but he did considerable repair work, fixing chimneys, building a garage attached to another building, putting in sidewalks and pump.

He testifies:. "I didn't figure on moving on that eighty acres on March 1, 1954, unless I had to. Of course, when you are on a rented place you never know. We supposed that if Mr. Leise wanted us to move he would serve notice on the first of November." He also says "our experience with Mr. Leise in the past two or three years has been that he changed his mind a lot and we never could depend on what he intended to do."

Mrs. Schiebel, referring to the May 26th (or 25th) conversation, testifies: "I didn't tell them we were going to move to the eighty acres we had purchased. There wasn't much of anything said about whether we were going to move. There definitely wasn't anything said about us buying a place* * *."

There is, as we said at the beginning, much sharply conflicting testimony. Manifestly we can set out but a small part. The burden was on plaintiff to prove either an oral agreement to terminate or such conduct of defendants, relied on by plaintiff to his disadvantage, as to create an estoppel. Our reading of the record and the fact the trial judge who had opportunity to see and hear the witnesses reached that conclusion combine to persuade us plaintiff has not carried that burden.

The legislature has provided a method by which to terminate farm tenancies. It is available to either landlord or tenant. It is peculiarly well-suited to meet a situation such as existed here and to permit a landlord to terminate a tenancy in such way as to leave no uncertainty between the parties at a time calculated to cause a minimum of injury to the tenant who must find a new landlord and negotiate a new contract. Plaintiff's failure to pursue the statutory method here cannot, under the record, be ascribed to reliance upon the alleged oral agreement or upon conduct amounting to estoppel.

The decision of the trial court must be and is affirmed.—Affirmed.

GARFIELD, C.J., and BLISS, OLIVER, WENNERSTRUM, MULRONEY, HAYS, and THOMPSON, JJ., concur.